**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **WALTER ARNETT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-12-CV-488-XR** |
| | § | |
| **SEARS, ROEBUCK AND CO.,** | § | |
| | § | |
| **Defendant.** | § | |

---

## DEFENDANT'S MOTION TO DISMISS AND
## MOTION FOR SUMMARY JUDGMENT

---

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Sears, Roebuck and Co. ("Sears") moves for summary judgment on the FLSA claim and moves to dismiss the disability discrimination and retaliation claims asserted by Plaintiff Walter Arnett ("Arnett"), and would respectfully show as follows:

### I.   INTRODUCTION

Arnett is a former Service Technician for Sears. Sears terminated Arnett on or about November 23, 2010 for filling out customer surveys in violation of Sears' policy. Although Arnett's original lawsuit alleged claims of disability discrimination and retaliation, he is currently pursuing only the claim that Sears did not pay him overtime for his travel time in violation of the Fair Labor Standards Act (the "FLSA"). Arnett cannot support a claim for overtime under the FLSA because Sears properly paid Arnett for any commute time over 35 minutes, and it could not have known and did not have reason to know that Arnett was not receiving payment for overtime he now claims but did not record. Further, the Court should

dismiss Arnett's claims for disability discrimination and retaliation because he has stipulated on the record that he is not pursuing such claims.

## II.    PROCEDURAL HISTORY

Arnett filed his Original Petition on August 4, 2011 against the Texas Workforce Commission (the "TWC") and Sears in the 73rd Judicial District Court of Bexar County, Texas, appealing the TWC's denial of his claim for unemployment compensation benefits. (Petition, attached as Ex. A). Arnett also asserted claims of disability discrimination and retaliation against Sears. The lawsuit was styled *Walter Arnett v. Texas Workforce Commission and Sears and Roebuck,* Cause No. 2011-CI-12680.

Sears filed a Motion to Sever the Incompatible Claims, and on November 9, 2011, the parties agreed and the Court signed an Agreed Order Severing Claims and Removing Case from Jury Docket. (Order, Ex. B). The state district clerk issued a notice assigning a new cause number to the second lawsuit – *Walter Arnett v. Sears, Roebuck & Co.,* Cause No. 2011-CI-18008. (Notice, Ex. C). On April 18, 2012, Plaintiff filed his First Amended Petition in Cause No. 2011-CI-12680, asserting only disability discrimination and retaliation against Sears. (Amended Petition, Ex. D). Plaintiff added a claim against Sears that he was not paid overtime in violation of the FLSA. Sears removed Cause No. 2011-CI-12680 to this Court on May 17, 2012. (Doc. 1).

## II.    FACTUAL BACKGROUND

Arnett was hired on October 10, 1996 by Sears as a part-time Service Technician in San Antonio, Texas. (P. Dep. 8:6-16; 9:13-10:8, Ex. E). Arnett was later transferred to the Victoria, Texas area, and in 2007 Arnett became a full-time employee. (P. Dep. 8:17-24; 10:18-24, Ex. E). At the time of his termination, Arnett was an In-Home Service Technician 2-HA, whose

duties included in-home service of refrigeration and air-conditioning. (P. Dep. 8:25-9:12, Ex. E). Sears' Service Technicians in the San Antonio and Victoria areas travel to various residential locations in their company-issued service vans and perform maintenance and repair services on Sears' appliances. (Declaration of Joe Alonzo, attached as Ex. G; Declaration of Rudy Martinez, attached as Exh. H). As a Service Technician, Arnett could choose to appear at a Sears Service Center or store to pick up and drop off his service van each workday under Sears' Home Dispatch Program (the "HDP"). (P. Dep. 15:12-23:l, 25:1-16, Ex. E; Ex. F-1). Alternatively, he had the option to take the service van home and start his work route from home every day. (P. Dep. 25:1-6, Ex. E; Ex. F-1). Arnett signed an "I Know It" training coupon on the subject "Home Dispatch – Van Location" on January 24, 2006, after receiving training on this subject on the same day. (Ex. F-1). Arnett chose the option of taking the service van home each day. (Ex. F-1; P. Dep. 16:3-18, Ex. E).

To carry out his job duties, Arnett was given a service laptop (also known as a "SST") that he was to carry with him on the job. (P. Dep. 17:6-8, Ex. E; Ex. F-1). Arnett was instructed to enter onto the service laptop the time when he left home en route to his first customer. (P. Dep. 17:9-13, Ex. E). In fact, a technician who took the van home would make four time entries on the SST each day: when he left his driveway ("start day"), when he arrived at the first customer ("start pay"), when he finished with the last customer at the end of the day ("end pay") and when he arrived home ("end day"). (P. Dep. 18:20–19:-9, Ex. E, Ex. F-1 through F-4). Arnett's compensation began upon arrival at the first customer's home and ended when the work was completed at the last customer's home. (Ex. F-1). If the commute in the morning to the first customer or the commute home after the last customer of the day exceeded 35 minutes, then he was to be paid for all additional travel time. (P. Dep. 19:10-15; 24:9-16, Ex. E; Ex. F-1). Sears

paid for travel time, excluding 35 minutes either way, if it was recorded on the laptop. (P. Dep. 19:16-20, Ex. E). It was Arnett's job to record his time on the laptop. (P. Dep. 19:21-23, Ex. E).

Arnett admitted that his service laptop would malfunction only on rare occasions, so that he could not input his time. (P. Dep. 21:17-20, Ex. E). Arnett asserted, however, that there were times when he forgot to input his starting or quitting time. (P. Dep. 21:21-24, Ex. E). Whenever there was a discrepancy in Arnett's reporting of time, Arnett would manually fill out a Time Correction Form, sign it and submit the form for his supervisor's signature. (P. Dep. 22:4-22, Ex. E; Ex. F-2). Arnett understood the Time Correction Form process and filled out Time Correction Forms several times. (P. Dep. 22:23-25 – 23:1, Ex. E).

Arnett asserts that he was not paid overtime for his travel time because he did not record his time in order to meet his productivity goals. (P. Dep. 20:3-21:12, Ex. E). Specifically, Arnett now claims that he was "shorted" at least ten hours of overtime a week for half of the years that he worked for Sears. (P. Dep. 14:1-15:7, Ex. E). Arnett says he no longer has any logs that would confirm this discrepancy. (P. Dep. 25:25-26:13, Ex. E).

Arnett never complained to any Sears Manager or to Human Resources that he was not being paid for any of his travel time under the policy. (P. Dep. 21:13-16, Ex. E). On the one or two occasions when he believed the paycheck had shorted him on the number of hours he reported, Arnett brought it to the attention of Human Resources, which corrected it. (P. Dep. 23:9-15, Ex. E). Further, Arnett admitted that at no time did he ever go to anyone at Sears and say he was entitled to overtime pay for all or most weeks, but had not received it. (P. Dep. 30:20-24, Ex. E). Arnett's only claim is that he made an off-the-cuff remark to his supervisor, Technical Manager Bob Perkins, in 2007 that he was not recording all of his time, and Perkins responded that he knew it. (P. Dep. 28:7-30:15, Ex. E). Arnett has no evidence that either of his

supervisors since early 2010 (discussed below), Joe Alonzo and Rudy Martinez, was aware that Arnett was not reporting his compensable commute time. (P. Dep. 27:7-29:8, Ex. E). Further, Arnett admits that no Sears manager ever told him to work "off the clock." (P. Dep. 39:1-4, Ex. E).

In early 2010, Sears closed the Victoria, Texas service area and contracted that work out to local repair shops. (Alonzo Decl., Ex. G).   Sears offered Arnett a position as a Service Technician in the San Antonio area, and Arnett accepted. (Alonzo Decl., Ex. G). Arnett worked out of the San Antonio office from early 2010, reporting to Rudy Martinez, until the end of his employment with Sears in November 2010.   (Alonzo Decl., Ex. G; Martinez Decl., Ex. H; P. Dep. 10:25-11:5, Ex. E). Arnett's ending rate of pay was $19.35 an hour. (P. Dep. 11:6-13, Ex. E).

Arnett was terminated by Sears after an internal investigation revealed that between February 2010 and November 2010, Arnett had been filling out customer satisfaction surveys on his personal computer in violation of Company policy. (Martinez Decl., Ex. H). When Arnett was confronted with the information by Former District Service General Manager Paul Cartia, Loss Prevention Manager David Rotter, Technical Manager Rudy Martinez and Human Resources Specialist Gabriela Morales, Arnett admitted that he had completed approximately 100 customer satisfaction surveys using his home computer. (Martinez Decl., Ex. H).   As a result of the investigation and Arnett's admission, Sears terminated Arnett's employment on or about November 23, 2010. (Martinez Decl., Ex. H).

### III.   ARGUMENT AND AUTHORITIES

#### A. Summary Judgment Standard

Summary Judgment is appropriate if the pleadings and discovery on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c).  Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995).

#### B. Arnett's FLSA claim fails because he never informed Sears that he was not being paid the overtime for which he now sues, and he failed to avail himself of Sears' procedures for reporting compensation issues.

Arnett claims that he worked overtime for which he was not paid, specifically that he was not paid for all of his commuting time.  Arnett's claim that he should be compensated for this travel time fails as a matter of law.

Under the FLSA, an employee's activities are compensable if they are part of his workday, which includes all time during which an employee is required to be on duty, or on an employer's premises, or at a designated workplace.  29 C.F.R. §§ 785.11, 785.15.  Further, the FLSA requires employers to compensate nonexempt employees for overtime worked in excess of 40 hours in a given work week.  29 U.S.C. § 207(a).

Under the Portal-to-Portal Act, travel time is non-compensable if it involves going to and from the actual place where the employee's principal activities are to be performed, such as ordinary home-to-work travel.  29 U.S.C. § 254(a).  Non-compensable time includes "(1) walking, riding or traveling to and from the actual place of performance of the principal activities

which such employee is employed to perform, and (2) activities which are preliminary or postliminary to said principal activity or activities." *Id.*  Normal travel time from home to work and back is not considered compensable work time, regardless of whether the employee works at a fixed location or at different job sites. 29 C.F.R. § 785.35.  Any time spent by an employee in traveling as part of his principal activity *during* the workday, i.e., after the workday has begun, must be counted as "hours worked," whether the travel is local or out-of-town. 29 C.F.R. § 785.38.

In general, courts have recognized that commute time under 35 minutes is not compensable.  The Fifth Circuit's opinion in *Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400, 2011 WL 2392359 (5th Cir. June 15, 2011) is directly on point.  In that case, Sears in-home service technicians like Arnett sued for overtime pay for time spent commuting in company-owned vans from their homes to their first service call of the day and traveling from their last service call back to their homes.  *Chambers*, 428 Fed. Appx. 400, 402-403.  Under Sears' Home Dispatch Program ("HDP"), which is identical to the HDP in which Arnett participated, the technicians had the option of not reporting to a centralized location to start their work day; they could choose instead to report directly to the first customer in the morning and return home from the last customer of the day.  *Id.* at 403.

*Chambers* technicians were not paid for the first 35 minutes of travel to the location of their first customer of the day, nor for the first 35 minutes of the trip home from the last service call of the day.  *Id.*  Sears did, however, compensate the technicians for time spent in excess of 35 minutes in either direction, as in our case.  *Id.*  Conversely, if time spent commuting to the first service call or from the last service call was 35 minutes or less, the technicians received no

pay for their commuting time. *Id.* The plaintiffs in *Chambers* argued they should have been paid for this travel time at overtime rates. *Id.* at 406.[1]

The Fifth Circuit applied the Employment Commute Flexibility Act ("ECFA"), which clarifies the applicability of the Portal-to-Portal Act to the payment of wages to employees who use employer-provided vehicles. *Chambers*, 428 Fed. Appx. At 409. The court stated that an employee's use of the employer's vehicle for travel which is incidental to the employee's principal activities is not compensable if the vehicle is (1) used within the normal commuting area for the employer's business and (2) subject to an agreement on the part of the employer and the employee. *Id.* at 409-410 (citing 29 U.S.C. § 254(a)). Commute times less than 35 minutes, said the court, are within the definition of ordinary home-to-work travel and are thus non-compensable under the Portal-to-Portal Act. *Id.* at 410-411.

Again relying on the ECFA, at 29 U.S.C. § 254(a), the Fifth Circuit flatly rejected the plaintiffs' argument that, because the van contained parts or tools, this transformed otherwise non-compensable travel into time for which the employee must be paid. *Id.* at 416-417. The court also ruled that the technicians' obligations to log on to the computer scheduling program each morning and plug the computer into a telephone line each night to receive automatic uploads were incidental to their commutes and not compensable. *Id.* The court further declared the technicians' time spent loading boxes of replenishment parts into the company van to be *de minimis* under the ECFA, because the boxes were received sporadically and the loading took only a few minutes. *Id.* at 418-419. In sum, our appeals court concluded that time spent traveling to the first service call of the day and back home from the last service call was not

---

[1] Plaintiff is not claiming that he performed work at home for Sears for which he should have been paid. (P. Dep. 15:8-11, Ex. E).

compensable under the ECFA, particularly in light of Sears' policy of paying for commute time exceeding 35 minutes each way.

In the present case, Arnett signed an "I Know It" training coupon on the subject "Home Dispatch – Van Location" in which he acknowledged receiving training on this subject. (Ex. F-1). Arnett had a choice – he could have elected to travel to and from a designated service center rather than directly to and from customers' homes at the beginning and ending of his workday. *Id;* (P. Dep. 19:10-23). Therefore, his signing of the "I Know It" training coupon constitutes an agreement which satisfies the ECFA and renders his commuting time below 35 minutes non-compensable.

Arnett alleges that one of his prior supervisors, Bob Perkins, acknowledged that Arnett was not putting down all of his commuting time. Arnett further alleges, however, that Perkins made this statement in 2007. Given that Mr. Perkins' statement was made, according to Plaintiff's own admission, two years before April 18, 2009, it was well beyond the three-year limitations period for FLSA claims.[2] There is no evidence of Defendant's knowledge of Plaintiff's time-reporting practices in 2009 or 2010, whether on the part of Perkins or any other supervisor.

Finally, Arnett's claims for overtime pay are defeated by his failure to avail himself of Sears' time correction policy. In *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 19 WH Cases 2d 1441 (6th Cir. 2012), the Sixth Circuit affirmed summary judgment for a

---

[2] Arnett also claims that co-worker Larry Ennis was told to work off the clock by Joe Alonzo and Bob Perkins. Ennis' testimony "implied" that Alonzo made a statement the he should work off the clock and that Perkins made a statement to him prior to 2009 that he should "be off the clock." (Ennis Dep. 16:3-25; 39:19-42:23; 49:14-52:13, Ex I). The first time Arnett alleged a violation of the FLSA was in his First Amended Petition, filed April 18, 2012. (Doc. 1). Thus, even using the three-year statute of limitations reserved for willful violations of the FLSA, Arnett cannot rely on evidence that is more than three years prior to April 18, 2012, which in this case would be April 18, 2009. 29 U.S.C. § 255(a). Indeed, if the standard two-year limitations were applied, Perkins' alleged admission would have predated the start of limitations by three years. Thus, any evidence of violations prior to April 18, 2009 is barred as a matter of law.

healthcare employer in an FLSA case. The court found that the hospital neither knew nor had reason to know that the plaintiff nurse was not receiving pay for missed meal breaks, because she did not use an exception log to record the extra time worked. *White,* 19 WH Cases 2d at 1445-1446. The evidence showed that plaintiff knew of the meal break policy and understood that if she worked during her meal break, she had to record the time in an exception log in order to be compensated for her time worked. *White*, 19 WH Cases 2d at 1442. The nurse had used the exception log on multiple occasions, but then stopped using it. *Id.* The plaintiff admitted she was aware of the hospital's procedure for reporting and correcting payroll errors, but abandoned it "because she felt it would be an uphill battle." *Id.*

The court in *White* held that if an employer establishes a reasonable process for an employee to report uncompensated work time, it is not liable for non-payment if the employee fails to follow the established process. *Id.* at 1445-1446. "When an employee fails to follow reasonable time reporting procedures," it observed, "she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *Id.* at 1445. In such circumstances, the court concluded, the employer could not have known of the issue and therefore was not liable. *Id.* at 1445-1446.

Like the plaintiff in *White*, Arnett acknowledges that Sears has an Associate Timekeeping/Correction Form, (what is commonly called an "exception listing") available to employees wishing to correct any errors in their time records, and it is undisputed that Arnett used this form many times. (P. Dep. 22:23-23:1, Ex. E). Arnett knowingly underreported the time for which he now sues, without using Sears' process for reporting and correcting such time so he could be properly compensated.

Plaintiff also claims that Joe Alonzo, Bob Perkins and Rudy Martinez could have known that he was underreporting his hours by looking at his timekeeping logs. (P. Dep. 28:3-32:5, Ex. E). Plaintiff has no evidence, however, that Perkins, Alonzo or Martinez ever looked at his timekeeping logs, much less that any of them had "constructive knowledge" that Arnett was not recording all of his compensable time. Courts have been clear that merely having access to timekeeping records that could possibly show that overtime pay is not being recorded or paid does not impute "constructive knowledge" to the employer of an FLSA violation or subject it to liability under the statute. *Newton v. City of Henderson,* 47 F.3d 746 5th Cir. 1995); *White*, 19 WH Cases 2d at 1443-1445; *see also Hertz v. Woodbury County*, 566 F.3d 777, 781-782 (8th Cir. 2009) ("Access to records indicating that employees were working overtime, however, is not necessarily sufficient to establish constructive knowledge"; "[i]t would not be reasonable to require that the [employer] weed through non-payroll CAD records to determine whether or not its employees were working beyond their scheduled hours . . . [especially] given the fact that the [employer] has an established procedure for overtime claims that Plaintiffs regularly used."). "The FLSA's standard for constructive knowledge in the overtime context is whether the [employer] 'should have known,' not whether it could have known." *See Hertz*, 566 at 782.

In *Newton v. City of Henderson*, a police officer sued a city for failing to compensate him for all of the overtime he worked as a member of a task force. *Newton*, 247 F.3d 746 (5th Cir. 1995). Specifically, he alleged that the city knew he was working more overtime hours than he reported, because he told his supervisors this on a daily basis, and so they "must have known that he was working overtime." *Id.* at 748. The district court held that because one of his supervisors had access to the information regarding plaintiff's activities, the city "had constructive knowledge" that the officer was working uncompensated overtime. *Id.* at 749. The Fifth Circuit

reversed, stating that "as a matter of law such access to information does not constitute constructive knowledge that the officer was working overtime." *Id.*  Given that the officer's supervisor had expressly ordered him not to work overtime, and the officer's admissions that he never demanded payment for overtime worked and never used the process for reporting overtime, the Fifth Circuit refused to impute "constructive knowledge" of the unpaid overtime to the city merely because the supervisor had access to the plaintiff's reported hours. *Id.* at 749-750.

Like the plaintiffs in *White* and *Newton,* Plaintiff never used the Time Correction Forms to record any of the alleged overtime for which he now sues; he never demanded payment for overtime; and he has no competent evidence that his supervisors knew of his alleged underreporting of his time other than their having access to his records.  In the present case, moreover, the rationale for denying Plaintiff's overtime claims is even stronger: unlike the facts of *White* and *Newton,* our Plaintiff actually did submit Time Correction Forms in order to receive other overtime pay on many occasions.  As a result, Plaintiff has failed to provide any evidence that Sears knew or should have known that he was underreporting his time.  Plaintiff's claim for unpaid overtime fails, and the Court should dismiss his FLSA claim.

### C. Arnett's disability discrimination and retaliation claims should be dismissed because he stipulated to their dismissal on the record.

Arnett has stipulated to the voluntary dismissal of his disability and retaliation claims on the record. (P. Dep.4:9-17; 13:3-7, Ex. E).  Although Defendant has repeatedly asked Arnett to conform his pleadings to this stipulation, he has failed to do so.  Therefore, Defendant moves the Court to dismiss Arnett's disability discrimination and retaliation claims as well.

## V.    CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant asks the Court to grant its motion for summary judgment and dismiss Plaintiff's suit in its entirety.  Defendant also prays for such other and further relief to which it may be entitled.

Respectfully submitted,


/s/  Soña Ramírez
ROBERT E. BETTAC
State Bar No. 02268400
SOÑA RAMÍREZ
State Bar No. 24040330
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
112 East Pecan Street
2700 Weston Centre
San Antonio, Texas  78205
210.354.1300 - Telephone
210.277.2702 - Facsimile

**ATTORNEYS FOR DEFENDANT
SEARS, ROEBUCK AND CO.**


## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of April 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Adam Poncio
Poncio Law Offices, P.C.
5410 Fredericksburg Road, Suite 109
San Antonio, Texas  78229-3550


/s/  Soña Ramírez
Robert E. Bettac / Soña Ramírez