UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| WALTER ARNETT, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| VS. ) | Civil Action No.  SA-12-CA-488-XR |
| ) | |
| SEARS, ROEBUCK AND CO., ) | |
| ) | |
|    Defendant. ) | |

**ORDER**

On this day, the Court considered Defendant Sears Roebuck & Company's Motion to Dismiss and Motion for Summary Judgment, Plaintiff's Response, and Defendant's Reply.  Having reviewed the motion and evidence, the Court denies Defendant's motion for summary judgment.

**Background**

Sears Roebuck & Company hired Walter Arnett on October 10, 1996 as an at-home service technician to work on refrigerators and air conditioning units.  In 2007, Arnett transferred to Victoria, Texas.  He was discharged from his employment in November 2010.  Sears required technicians to travel to various residential customers' homes  to address their repair needs and were given company vehicles to drive from their home and laptops to upload information about customers, inventory and hours worked.[1]  The laptop functioned, in part, as a punch clock and every technician who parked their company van at their home needed to input information into the laptop at least four times: start day, start pay, end pay, and end day.  Start day means the technician left their house, start pay that they arrived at their first customer, end pay that they finished with their last customer and end day that they arrived home.[2]

Since Plaintiff traveled to his first customer site from his home, rather than a usual work

---

[1]Deposition of Larry Ennis at pp. 16-18.

[2]Deposition of Walter Arnett at pp. 18-19.

site, Sears utilized a "thirty-five minute rule," which meant a driver would be paid if travel exceeded thirty five minutes between start day and start pay. In January 2006, Arnett signed an "I know it" training coupon, which said "you will be paid for any commute time at either end of the workday that exceeds the normal commute time, which is 35 minutes under the Home Dispatch Program. For example, if the commute from your home to the first customer location is 45 minutes, you will be paid for ten minutes. Similarly, if the commute from the last customer location to your home (at the end of the workday) is 45 minutes, you will be paid for ten minutes."[3]

On April 18, 2012, Plaintiff amended his state lawsuit to allege a claim under the Fair Labor Standards Act. Plaintiff claims that he worked hours traveling to customers' homes in excess of the 35 minute rule, but did not receive compensation for those hours.[4]

## Summary Judgment Standard

Summary judgment is appropriate if the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All reasonable inferences are drawn in favor of the nonmoving party. A party, however, cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *VRV Dev. L.P. v. Mid–Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011).

## Analysis

### A.   The Home Dispatch Program is valid

The Fifth Circuit has addressed a similar claim in *Chambers v. Sears Roebuck and Co.*, 428 Fed. Appx. 400 (5th Cir. 2011). Chambers attacked the same "Home Dispatch Program" at issue in this case. The Fifth Circuit reviewing the applicable regulations stated that use of a company vehicle for commuting is not considered part of the employee's principal activities if the

---

[3] Docket no. 16, exhibit F.

[4] In addition to travel times allegedly not paid, Arnett's counsel also seeks "the pre and post travel work required and lunch breaks and other time to which he may be entitled." In Plaintiff's deposition, however, it is clear that he only sought unpaid travel time as damages. Plaintiff's Depo. at p. 15 ("What else beside travel time that you were not paid for? Let's just leave it at travel time"). Counsel's use of the deposition of another former employee (Larry Ennis) to contradict his own client's deposition testimony will not be considered on the issue of damages. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495–96 (5th Cir. 1996) (a party cannot "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony").

use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee. *Id.* at 409-410.

On January 24, 2006, Plaintiff signed the "I Know It" agreement and acknowledged receiving training on the Home Dispatch Process. In *Chambers*, the Fifth Circuit also addressed the Portal–to–Portal Act, as amended by the Employment Commute Flexibility Act ("ECFA"), which clarifies the payment of wages to employees who use employer-provided vehicles. The Court held that Sears' Home Dispatch Process or HDP complies with both prongs of the ECFA.

### B.     Travel time claimed in excess of the 35 minute rule

Plaintiff argues that he did not receive overtime compensation of "at least 10 hours per week." Plaintiff argues that one or two times in 2007, he told his former supervisor (Bob Perkins) that he was not reporting all of his time and that Mr. Perkins understood and acknowledged he knew of the under-reporting. Plaintiff suggests that since technicians were evaluated on the basis of "completes per day" and "trips per repair" that Mr. Perkins told him and fellow former employee Larry Ennis "not to be on the clock until [they were] close to the first call."[5]

"An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). "[I]f the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation..." *Id.* at 441.

In addition to actually informing Mr. Perkins that he was working, but under-reporting his time, Plaintiff testified that a review of his time records would reflect that he was recording 15 minutes of travel time for a drive between Seadrift, Texas to Stockdale, Texas (a distance of over 105 miles).[6] Further, Plaintiff testified that every manager who supervised him told him no

---

[5]Ennis' Depo. at pp. 32-33.

[6]Plaintiff also cited examples such as 15 minutes between Port Lavaca, Texas and Stockdale, Texas (over 100 miles) and 10 minutes from Stockdale to San Antonio (approximately 40 miles).

overtime was authorized.[7]  Finally, Plaintiff testified that a technician's productivity affected his manager's productivity analysis, so managers had an incentive not to say anything about technicians under-reporting travel hours.[8]

The record supplied by the parties is unclear, but it appears that Mr. Perkins supervised Plaintiff and Mr. Ennis from sometime in 2006 until April or December of 2009.  At some point in 2009, Plaintiff and Mr. Ennis were supervised by Joe Alonzo.

Although Plaintiff did not testify as to any direct conversations he had with Mr. Alonzo[9], Mr. Ennis testified that Mr. Alonzo told him to get off the clock so to improve his productivity numbers.[10]  In a Declaration submitted in support of Defendant's motion, Alonzo declares that he did not know of any unreported time and did not hear any complaints from the technicians about under-reporting.[11]

At some point in 2010, Plaintiff was transferred to San Antonio.  Immediately or shortly after his transfer Plaintiff went on some unspecified leave.  He returned to work in early November 2010 was supervised by Rudy Martinez.  He was discharged on November 23, 2010. Plaintiff presents no evidence to suggest that Mr. Martinez was aware of any under-reporting of hours.[12]  It is unclear whether Plaintiff is claiming he suffered any damages after he was transferred to San Antonio.

Plaintiff and Mr. Ennis concede that they were never directly asked or told to work off the clock.[13]

---

Plaintiff's Depo at pp. 31-32.

[7] Plaintiff's Depo. at p. 33.

[8] *Id.* at p. 45.

[9] A review of the Plaintiff's deposition indicates that no direct questions were asked about Mr. Alonzo.  Plaintiff usually responded to questions referencing all his supervisors.

[10] Ennis Depo. at pp. 39-42.

[11] Docket No. 16-12.

[12] Plaintiff's Depo. at p. 28.

[13] Depo. Arnett at pp. 33 and 39.

      **C.**    **Defendant's argument that statements allegedly made by Perkins and any awareness by Perkins of under-reporting does not create a genuine and material fact issue**

Defendant argues that inasmuch as Plaintiff filed his FLSA claim on April 18, 2012 and there is a three year statute of limitations, any statements made by Perkins in 2007 constitutes no evidence that Sears knew of under-reporting in 2009 and 2010. As noted above, the record is unclear when Perkins ceased supervising the Plaintiff (April or December of 2009). Accordingly, Perkins may have supervised Arnett during the three year limitations period.

In addition, Defendant appears to blur the distinction between incidents that may not be considered for purposes of establishing liability for damages, because they occurred outside the limitations period, and what nevertheless may be admissible and probative as background evidence to support a claim based on alleged conduct that falls within the limitations period. *See McGullam v. Cedar Graphics*, 609 F.3d 70, 86 (2d Cir. 2010); *Abbott v. Chattanooga Hamilton County Hosp. Authority*, 2013 WL 448922 (E.D. Tenn. Feb. 6, 2013); *James v. Countrywide Financial Corp.*, 849 F. Supp. 2d 296 (E.D. N.Y. 2012). *But see Lewis v. Keiser School, Inc.*, 2012 WL 4854724 (S.D. Fla. 2012)("Whatever occurred outside of the limitations period cannot create a genuine issue of fact, where the undisputed evidence otherwise shows that she was always paid a fixed salary within the limitations period."). In this case there is evidence that Joe Alonzo was aware of and condoned the under-reporting of time during the three-year limitations period. Mr. Alonzo disputes this evidence.

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) *(citing Reaves Brokerage Co.*, 336 F.3d at 412–413). Plaintiff has established that a genuine and material fact issue exists and that summary judgment is improper.

### D. Constructive knowledge claim

As stated above, Plaintiff argues that his employer should have known that he was under-reporting his hours based upon submitted time records that showed long distances traveled in mere minutes. Defendant argues that any constructive knowledge claim fails because Plaintiff provides no evidence that his supervisors actually reviewed the submitted time sheets.

"Constructive knowledge exists if by 'exercising reasonable diligence' an employer would become aware that an employee is working overtime. An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 448 (5th Cir. 2009) (internal citations omitted).

The Fifth Circuit, however, has conditioned the above by holding that if the "employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [the FLSA]." *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995).

Inasmuch as Plaintiff has established a material fact issue on the question of actual notice, it is not necessary for the Court to address whether the employer had constructive knowledge.

### E. Failure to use Sears' time correction policy

Defendant argues that it had a policy in place where employees could request that corrections to their time records be considered. Plaintiff was aware of the policy and had used the policy on other occasions. "Under the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012)(*citing Newton*, 47 F.3d at 749-50).

Defendant's reliance upon *White* is misplaced. *White* and *Newton* stand for the proposition that where there is no evidence that an employer discouraged employees from reporting time worked (or that they were otherwise notified that their employees were failing to report time worked), the employer should not be liable under the FLSA.

*White* clearly stands for the proposition that where an employer prevents its employee

from reporting overtime or was otherwise on notice of the employee's unreported work, an employee may recover damages under the FLSA, regardless of whether the employee exhausted any internal company grievance policy or time correction policy.  *White*, 699 F. 3d at 876-77.

## CONCLUSION

Defendant's Motion for Summary Judgment (docket no. 16) is denied.  Defendant's Motion to Dismiss Plaintiff's claims of disability discrimination and retaliation is granted inasmuch as Plaintiff stipulates to the dismissal of those claims.  See Plaintiff's Response at ¶ 1.

It is so ORDERED.

SIGNED this 1st day of July, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE